No. 12,158.

LeZOTTE v. BANK OF DEL NORTE.

Decided June 3, 1929.

Mr. HERBERT W. MARTIN, for plaintiff in error.

Mr. W. SCOTT CARROLL, for defendant in error.

*In Department.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

THIS action, a friendly suit, was begun by plaintiff Mrs. Wheeler in her capacity as heir of Winnie B. Comstock, deceased, and as guardian of other and minor heirs. The complaint named as defendants other heirs, or their legal representatives, and the Bank of Del Norte. The Attorney General and the State Inheritance Tax Commission of Colorado were also joined as defendants because of their authority to ascertain what, if any, inheritance tax is due from this estate. This action, so far as it affects the state officers, is at an end, no claim for an inheritance tax being made. The salient facts are that in 1921 Mrs. Comstock deposited with the Bank of Del Norte the sum of $3,535 and received the bank's certificate of deposit therefor, payable to her order, due in 90 days with interest at the rate of 4 per

cent per annum, but no interest was to accrue or to be paid after maturity. In March, 1921, after the maturity of the certificate, Mrs. Comstock met her death in a sleeping car and the personal effects that she had with her then burned. Her estate was admitted to probate and the administrators thereof, her husband and Mrs. Wheeler, in an effort to assemble the assets of the estate, applied to the president of the Bank of Del Norte, with which Mrs. Comstock had done business, to ascertain if the bank had control of, or in its possession, any of the property of the estate. The president exhibited to the administrators the checking account of Mrs. Comstock as it appeared on the bank ledger, showing a balance of about $19. One of the administrators himself testified that he asked the president of the bank what money his wife, Mrs. Comstock, had in the bank and the president looked on the bank's records and informed him of the small balance then in her checking account. The administrators then looked in the safety deposit box of Mrs. Comstock for any deposit certificates but there were none. The president himself, in effect, corroborates this evidence and says that the only questions which the administrators asked were about the checking account, and whether or not there was any balance. Nothing was said at the time by either of the parties about a certificate of deposit. The bank president was called as a witness by the plaintiff. He testified that shortly after the certificate was issued, Mrs. Comstock, the deceased, came to the bank and got her deposit box and withdrew therefrom this certificate of deposit, which she brought to the president's desk and asked him if it would be all right to transfer it to another party and the president told her that it would be, but that she would lose her accrued interest if she cancelled it, and she said that she was on a deal for some property and expected to transfer the certificate and asked if it would be agreeable to the bank and we told her it would be.

■ The real controversy, and the only one of fact

and of merit or importance involved in this case, is whether the bank is liable for interest upon the certificate of deposit after maturity. The certificate itself says that no interest will be due after maturity. The theory of the plaintiff in error here is that it was the duty of the president of the bank at the time the administrators asked him the state of the deceased's checking account, to disclose to them that the bank had issued to her this certificate of deposit and that he did not do so. The testimony is clear, to the point that the only inquiry made of the bank was as to the state of the checking account. Since Mrs. Comstock, who held the bank's certificate of deposit, a short time after its issuance made the statement to the president of the bank about her purpose to part with it in some property deal she had in hand, and in view of the positive testimony of the president, which is not contradicted, that no inquiry was made thereof, we think the trial court was justified in finding from the evidence that the bank is not liable for a failure to disclose that it had issued to Mrs. Comstock this certificate. There is not the slightest evidence that tends to show that the bank president endeavored to mislead the administrators and it is only reasonable to conclude, as the trial court did, that he did not volunteer any information about this certificate of deposit, because at the time of the interview he supposed it had been disposed of by Mrs. Comstock in the business transaction which she mentioned.

As further evidence of good faith on the part of the president of the bank, several years later, in 1925, he wrote a letter to Mrs. Wheeler, plaintiff herein and one of the heirs of Mrs. Comstock and her daughter, informing Mrs. Wheeler that her mother, Mrs. Comstock, had a time certificate of deposit in the bank. This certificate of deposit was a negotiable instrument and the testimony shows that the experience of the Del Norte bank, and of banks generally, is that such certificates of deposit are often held for even a series of years and are

frequently the subject of transfer, and are not infrequently held for a long period of time after they cease to bear interest, sometimes for many years. The bank has never denied its liability on the certificate.

■ At the time of the trial, the statute of limitation had run as against this certificate in favor of the bank, and the trial court properly found, and so adjudged, that, without requiring indemnity, the bank should be held liable for the amount of the certificate, together with interest up to the date of maturity, and the bank not only in its answer, but in its offer to the court, agreed to pay this sum and such was the judgment of the trial court. If there was any carelessness on the part of any one it was not that of the bank. There was a claim, though it is not pressed with much force or seriously relied upon, that the certificate of deposit was burned at the time that Mrs. Comstock met her death, but the trial court found specifically that there was no evidence whatever to sustain such a claim and it was only because of the bar of the statute of limitation, in case the certificate of deposit should afterwards be presented by some one for payment, that the court waived the necessity of an indemnity to the bank in case it paid the judgment rendered.

■ If Mrs. Comstock were living and made a demand upon the bank for the payment of this certificate of deposit but was unable to produce it, the court would not render judgment in her favor for the amount claimed to be due thereon except on the condition of indemnity. The administrators ought not to be in any better position than the one to whom the certificate was issued. The general rule is that a bank is not bound to pay certificates of deposit except upon production and surrender of the certificate properly endorsed. The plaintiff has no complaint upon this score, however, because the court, considering that the statute of limitation had run against the certificate, rendered judgment against the bank for the amount which in its pleadings it offered to

pay, the court deeming that the statute of limitation was equivalent to an indemnity.

It should be stated that in her complaint, Mrs. Wheeler, one of the heirs and a guardian of several other heirs of Mrs. Comstock, does not claim, and at the trial did not claim, interest beyond the period of maturity of the certificate. It is only the conservator of the mental incompetent here who made such claim at the trial below and he prosecutes this writ of error.

We think the decree of the court is right and it is therefore affirmed.

MR. CHIEF JUSTICE WHITFORD, MR. JUSTICE ADAMS and MR. JUSTICE ALTER concur.